Case number 12-6027 in the case of Joe Oakley et al. v. City of Memphis. Arguments not to exceed 15 minutes per side. Mr. Shelton for the appellant, you may proceed. May it please the court, I'm Henry Shelton of the Memphis Bar, and I represent some 30 individual plaintiffs who are before this court for the second time in this case. In this case, your honor, we challenge, and I'm sorry, I need to reserve five minutes for rebuttal if I may please. This court deals with remedies, and the standard of review and remedies in a Title VII case is of course normally abuse of discretion. We've raised four issues for the court. Two of those issues involve errors of law rather than abuse of discretion. Two of them, frankly, are addressed solely to abuse of discretion. Let me start with the first and perhaps most important issue, which is the question of back pay. The district court found that overtime pay earned by my clients as police lieutenants who received time and a half for overtime constituted interim earnings under 2000EG2 of Title VII and therefore would be offset against any back pay award. This is an error of law. We respectfully submit the district court relied upon the Mendoza case, an unreported case out of the Eastern District of Louisiana, affirmed per curiam by the Fifth Circuit. However, the Mendoza case itself is also incorrectly decided because the Mendoza case, as the district court and the appellees in this case argue today, found that New Orleans police lieutenants who also received time and a half overtime when promoted to captain, captains as in Memphis majors, did not receive overtime but are exempt from the FLSA, were asking the court for back pay of interim earnings rather than permanent earnings. Now the problem is this. The great granddaddy of all these cases describing the difference between interim earnings and permanent earnings is Bing v. Roadway Express, a 1973 Fifth Circuit case. And as this court has held and courts in this circuit have held, and as all of Bing's progeny except for Mendoza in the case at Barr have held, interim earnings are those earnings which the claimant could not have earned had he received the promotion or employment that he sought. And it's really fairly simple. In Bing, for instance, the plaintiff sought back pay to include overtime that the plaintiff didn't get. But the Fifth Circuit pointed out, wait a minute, if you had gotten the promoted you wanted from city driver to road driver in that case, as a road driver you'd be working exempt 60, 70 hours a week, so you wouldn't have the time to earn it. What the courts have held from Bing on down is, and this is the magic words, if the claimant could not earn the money due to the promotion, basically physically couldn't, not legally couldn't, but didn't have the time, or the new job in one of the cases, for instance, the new job was that of state trooper and state troopers were prohibited from working extra. Likewise, firefighters in another case, which is in the record, were forbidden from moonlighting as firefighters. However, in the Oakley case, the case at VAR, there is no could not. There is only did not. That is Memphis police majors are exempt. They don't get paid overtime. The record reflects, however, that Memphis police majors don't work much overtime. The record indicates that the city tries to hold them to 43 hours maximum. And as the record in this case indicates, many of the police lieutenants who are before this court today work voluntary overtime, sometimes 60, 70 hours a week to make extra money. Therein lies the difference. The Mendoza court and the district court in this case misunderstood the requirements of the statute to say that if the promotion is to an exempt position, then no overtime compensation from the non-exempt position strike that. That overtime from the non-exempt position cannot as a matter of law, or must as a matter of law, rather, be credited against the back pay award. Now, another word. The distinction you make, you earlier said, physically could not versus legally could not in terms of the earnings in the job you should have been promoted to. Is that distinction a holding explicitly in Bing or elsewhere, or is that a lesson that you draw from the cases? Your Honor, it depends on what is is. I'm not going to get very far with that one. No, sir. All the law says could not have earned. And all the cases that say that, except for Mendoza and the case at Barr, say could not have earned because they didn't have the time to or because the new job didn't permit them to. You would, at least for me alone, you would be making more headway if there was a practice or an assertion that while they were majors, they would also have been working private security or FedEx or whatever. But that's not really your argument, is it? No, sir. That is exactly my argument. I'm sorry, Your Honor. Was there evidence in the record that they, in fact, did do that or that it was very likely they would have? There is certainly evidence that it's very likely that they would, and the evidence goes like this. The proof that the city put on indicated that many police officers either moonlighted or worked extra hours at the police department. But, for instance, I believe in the record there is, and I can't swear to this, but my recollection is there's evidence that policemen work other jobs. Well, we sort of know that, but did you assert or have some evidence that people at the rank of major and above did? The only evidence we have that majors did is that majors could. Majors had the time to. And there was no legal barrier to? No legal barriers. But not that you didn't have evidence that it was a regular practice or that there was a particular brokerage or something where people did? There's no such evidence in the record, Your Honor. But in theory that's really your point, that as lieutenants they got their base salary plus overtime. As majors, in principle, they could get their higher base salary plus private employment that would be the equivalent of overtime. Is that fair? Absolutely. Okay. Although as majors they had to be available for overtime uncompensated, but overtime nevertheless, right? Your Honor, again, the testimony in the record from Chief Harvey of the Memphis Police Department found in the Sabatini deposition is that that was discouraged. The city tried to hold them to 43 hours, and they would rarely, according to Chief Harvey, go over that. So the point is this. Lieutenants working 43 hours could then work another 43 hours, could moonlight another 43 hours, either for the city or for another employee altogether. Majors had the time to because majors only work, according to the record, 43 hours. So they have this additional time, and there's no legal prohibition from them doing it. Now, to get back to his Honor's question, I'm almost out of time. I'm sorry. I got sidetracked, and I need to make one more point. The point is that Mendoza and the district court in this case misread the law. The law is if you've got the time to do the job and there's no legal prohibition from doing it, then overtime, according to Bing and its progeny, is not a credit. Overtime is permanent earnings, not interim earnings, and that's the holding that we urge the court to make. Last point in 47 seconds. The other error of law is quite simply that on legal fees. As set forth in the Isabel case cited by the defendant and the Vaughn case cited by the defendant, the analysis should begin with the plaintiff's load star or the counsel's load star rate. In this case, undisputed, the load star rate for lead counsel was $375 an hour. The error of law is A, that finding, B, the finding by the district court that this case was not novel or complex, one of the 12 Isabel standards. I direct the court's attention to Supreme Court Rule 10, which defines novel or complex in this case. Finally, I'm out of time. Finish your sentence. As to the abuse of discretion, Your Honor, equitable remedies could easily have been fashioned to promote Lieutenants Cook and Bouchelin. The district court's failure to do so and its failure to consider loss promotional opportunities is an abuse of discretion. Thank you, counsel. You have your five minutes for rebuttal. May it please the court, my name is Robert Myers. I'm also from the Memphis Bar, and I'm here representing the City of Memphis in this case. The standard of review that's applicable to each of the four issues raised by the plaintiffs in this case is the abuse of discretion standard. That's defined as a definite and firm conviction that the trial court has committed a clear error of judgment. In each of the issues, the court did not commit a clear error of judgment. The first issue is the back pay. We go first to the statute. The statute says... First, tell us why what you just said I think directly contradicted your colleague of saying that by saying all four of them were abuse of discretion, why do you say that the two he says are issues of law you say are abuse of discretion? I don't believe that the court made an error of law. Oh, okay. But I thought you had said all four were abuse of discretion. They are, and as far as I'm concerned, this is the first time that I've heard that they're not. Okay. So the back pay. Back pay is controlled by the statute itself, and you have to look to the statute to understand what back pay is and what's includable and not includable. What's includable as it relates to back pay are interim earnings by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. It's just a requirement. You reduce the interim earnings. There's no magic. There's no complexity here. You know, we didn't need experts. So here the plaintiffs complained specifically. They said, well, wait a minute, we worked overtime, and in certain instances we also got out-of-rank pay for working at the next higher level. It's not really fair is essentially their argument. It's an equity argument. It's not fair that I worked hard and now I've wiped out my back pay obligations. As a legal matter, though, I thought I heard him say they contend that these overtime and out-of-rank earnings are not interim earnings but permanent earnings. That's what they claim as a definitional difference. Well, I mean, that may in fact be their claim, but I would say that the law is just the opposite under the circumstances. I think Bing and its progeny are correct in that the answer is not are you available to work but could you have done it. In here the answer to that question is no, they could not have done it. They could not have worked overtime. There is, in my view, nothing in the record that supports any contention that somehow they're available or lawfully allowed as majors to do any additional work. Again, that's something I think that's new here today. So in the analysis that the court undertakes, the court says essentially that these are interim earnings because the plaintiff earned them, in effect, by working hard. It's really no different than a plaintiff who had, say, left the city of Memphis and gone and gotten a different job that actually earned more money. Under that circumstance, the plaintiff would have eliminated his back pay obligations. That's well settled law, and I don't see any distinction between those two positions. What do you do with the, unless there's further questions on that, what do you do with the attorney's fee issue that your opposing counsel emphasized? Well, as much as I would love for the lawyers to be able to set their own fees, I don't think that's the standard. It's the court that sets the fee that's reasonable in the district, and the court did that. In fact, the attorney's fees is awarded, if you look at our footnote, is among the highest attorney's fees that have been awarded up to that point in time. I think there's only one other outlier that was awarded more. So this was the second, based on my research, the second largest attorney fee award that the court in the Western District had ordered for civil rights or Title VII cases. With regard to the issues brought up by the particular plaintiffs, Bouchillon and Cook, Lieutenant Bouchillon unfortunately did not fare well on the 2005 Barrett process. He ended up ranked 88th. It's undisputed that there were 65 positions that were promoted to major, ultimately. So he wasn't in the first 65, so even if the city had promoted off the 2005 list, as the plaintiffs claimed that they should have done originally, he wouldn't have been promoted. The same thing for Lieutenant Cook. Cook was in, I believe, 74th position. Now, in Cook's case, he took the subsequent process in 2007 and fared much better and was promoted to major. So they're just not qualified for promotions. They seem to argue, and I couldn't find whether this had been adjudicated in the merits that I take it their argument is the 2007 process, in effect, shouldn't have happened. The only reason it happened was because the 2005 process was thrown out and that if you restart the clock and rewind the clock, the 2005 list would have continued, I don't know for how long, but for some longer period, which would have allowed them to bubble up to the top as more places became available. I think that's the correct statement of their position in this case. I think the fact of the matter is that there's no proof that there were enough individuals promoted that they would have reached the rank positions for either of these offices. Is it conceded or ruled? I couldn't find a ruling that, in effect, the whole 2007 process should never have happened. I don't believe it. Isn't that the antecedent to their argument is that you have to run the counterfactual that the 2005 process would have gone along? I know there's no ruling by the court below that says that the city should not have engaged in the 2007 process. I thought that they did at least introduce evidence that the 65 promotions, that enough of those people or others fell out, retired, and so on, that there would have been openings had the 2005 list remained alive. Do you dispute that? Yes, sir. I don't believe that's correct. Okay. Did you present counter evidence on that that you can point to? Not that I can recall at this moment, no, sir. Okay. Go ahead. Can we go back to the back pay question for a minute? Was the argument made before the district court judge that had these folks been promoted to majors that they would have had the opportunity to moonlight at other jobs, and is that a practice in the city? I don't believe that argument was made, to the best of my recollection as we stand here now. Well, it's just not in the record as to whether or not the majors would be allowed to moonlight or not. Is there any evidence relating to that? Are you aware of a practice in the city that majors have to moonlight in order to supplement their income? I am not aware of that practice. The argument, you believe, was not made? Correct. And you're not aware of a practice? Correct, but I also candidly would say that I don't believe there's anything in the record that would say it's one way or the other. Okay. Thanks. There was also an issue raised about lost promotional opportunities. There's essentially no proof as to what that really would have been as to each of these individuals. I think it would have required such proof. It's just entirely speculative. The fact of the matter is the record does establish that many of the plaintiffs were, in fact, later promoted to higher ranks as would have been expected, and so to now come back and essentially undo that in some form or fashion and guess as to which ones would have been promoted I think is just entirely outside the purview of the appropriate remedies. And then the last thing, again, on attorney's fees. The real issue there is what's the reasonable standard in the Memphis area? It might be higher or lower in Cincinnati. It might be higher or lower in New York or Los Angeles. But I think the court had some good evidence in front of her and took all of that into account. You're saying in your district there's only one case where anything higher has been awarded? I believe that's correct. By the district court. Now, Mr. Shelton has cited— Was that the bankruptcy court award that was— No, sir. I think there is a district court award of close to $350 an hour that was awarded to a lawyer. I'm not saying Mr. Shelton is not experienced because he's as experienced as I am, but somebody that has more experience was awarded that fee. then I understand they have different arrangements in the bankruptcy court, and I just don't know what those are. But that's not the standard. The fact that in bankruptcy cases they get some different rate or even a higher rate I don't think is the standard for what one gets in civil rights cases. There's no shortage of lawyers in Memphis who are willing to sue the city and try to collect under Section 1988. And, in fact, Mr. Shelton has filed a subsequent lawsuit. So I see I still have four and roughly a half minutes, but that's really my presentation. I'm required to use all of it. Anything else? All right. Thank you, counsel. You have five minutes for rebuttal. Thank you, Your Honor. Let me first start by the standard of review question. With all due respect to not just my colleague but my friend, Mr. Myers, we've known that the appellants were challenging errors of law from day one. I read from page 20 of the appellee's brief, contrary to plaintiff's unsupported assertion, the standard of review for all the issues they raise on appeal is abuse of discretion. That was contrary because we argued errors of law in our brief. I think we're familiar that purely legal determinations can be reviewed in the law. Yes, Your Honor, and that brings us back to the question of being. Perhaps the best way I can answer the question about moonlighting is to actually refer to the language, although the court knows it, being. Since the trial court found that it would be impossible for Bing to moonlight while working 60 to 100 hours a week, it correctly concluded that his moonlight earnings were interim and deductible. The Jordan case, well, I'm sorry, Chesser v. State of Illinois, is also cited in the briefs, the Seventh Circuit case. A state patrolman's moonlighting as a private investigator and for the county sheriff's department would have been disallowed at his old state patrol job and only became legally available following discharge. Those jobs constituted deductible interim earnings. Counsel, what is the Bing citation? I didn't see that in your briefs in the table of authorities. It's 485 Fed Second 441, Your Honor. Am I right that it's not cited in your brief? Your Honor, I believe, I know it's cited in the... I don't want to hold you to your table of authorities, but that was the first place I went to look for it. I'm pretty sure it's in the city's brief, Your Honor. It may not be in mine. I'm not sure I saw it there either. Well, I'm not either, Your Honor. Okay, in any event, we've got the citation. It is certainly internally cited in the cases that we've referred to. Mr. Myers, where in the record would we find evidence that you made this argument about moonlighting and the availability of moonlighting for majors to judge, the district court judge in this case? Your Honor, we addressed the moonlighting issue considerably. I don't remember arguing to the district court in this case that majors could or could not moonlight. There is certainly no evidence in the record that they couldn't. If we were to go outside the record, and it could be a matter of judicial notice, I suppose, let me simply say I suspect that the court would find that moonlighting is common among Memphis Police Department officers. But I cannot direct the court to that in the record. It is in a sense correct that your argument addressing moonlighting was that it was sort of unfair to take those, to deduct those earnings because they had put in the effort and they would otherwise have had leisure time. So it is true some of your clients, I guess, got nothing or almost nothing. Some of my clients got nothing because they worked a lot of volunteer hours. One of them I saw had $125,000 worth of overtime. Yes, Your Honor, exactly. Let me briefly address the legal fee issue because I do think that's important and look at the proof in the record. The proof in the record, both from the bankruptcy court orders and two declarations of experienced counsel, contrary to counsel's argument, is that the standard rate for lead counsel for the plaintiff in this case at the time was $375 an hour. That's in Mr. Latham's declaration. That's in counsel's declaration. $375 is the lodestar rate. In all the cases I've read say as a matter of law you start with that and then the district court has certainly got the authority and discretion to adjust it upwards or downwards depending on results. He says in district court cases that has not been the lodestar rate except maybe once. Your Honor, actually. That's just not right. You can't just say whatever the lawyer says is the lodestar rate becomes the lodestar rate. That can't be the answer. Well, Your Honor, two answers to that. One is Mr. Latham's declaration which is in the record and Mr. Latham declares under oath as a part of this record that in this type of litigation $375 is the lodestar rate. That's in the Latham record. The lodestar rate I thought was the rate that the court determines to be the hourly rate that's appropriate. Your Honor, it's quite correct. You can't swear what the district court has defined. What you can swear is what the prevailing rate is for lawyers. I understand that. The counter argument is that regardless of what the prevailing rate is when they're charging clients, in district court awards it's always been $100 less than that. I'm just asking whether that's true or not. You have no way of knowing maybe. No, Your Honor. I would say that's not true. There's a case that we actually attached to our brief and that was awfully harsh. My opponent would never knowingly misrepresent anything. However, we did attach a case where the rate awarded in 2006 I believe was $425 an hour and that rate was awarded to Mr. Glassman, a member of the Memphis Bar, who's roughly my generation I'd say. Anything else? Thank you, counsel. The case will be submitted. The court may call the case.